<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| METRONET, LLC and EYAL SALEI<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE, N.A.,<br><br>Defendant. | Civil Action No. 25-3804 (SDW) (JBC)<br><br>**WHEREAS OPINION AND ORDER**<br><br>September 10, 2025 |

**WIGENTON**, District Judge.

    **THIS MATTER** having come before this Court upon Defendant Capital One, N.A.'s ("Defendant") filing of a motion to dismiss (D.E. 5 ("Motion")) Plaintiff Metronet, LLC and Eyal Salei's (collectively, "Plaintiffs") Complaint (D.E. 1-1 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and this Court having reviewed the parties' submissions; and

    **WHEREAS** Plaintiffs allege that Defendant authorized and processed four fraudulent wire transfers from a business savings account in Metronet, LLC's name, and pleads causes of action sounding in negligence and under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.*; and

    **WHEREAS** the New Jersey Supreme Court has made clear that Article 4A of the Uniform Commercial Code ("UCC"), codified in New Jersey at N.J.S.A. 12A:4A, "defines the customer's rights, and limits the liability of the bank, when it accepts a payment order that turns out to be unauthorized," and was drafted to provide the "exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." *ADS Assocs. Grp. v. Oritani Sav. Bank*, 99 A.3d 345, 354–56 (N.J. 2014) (quoting N.J.S.A. 12A:4A-102 cmt. 1); and

**WHEREAS** Plaintiffs' first cause of action sounds in negligence, alleging that Defendant owed him a general duty of care in preventing unauthorized transfers. However, Article 4A governs "unauthorized payment orders" and sets forth the precise standards by which banks must accept or reject such orders. N.J.S.A. 12A:4A-202, -203. Permitting a parallel negligence cause of action would conflict with Article 4A's uniform standards and remedies. *See ADS Assocs.*, 99 A.3d at 354–57. Accordingly, Plaintiffs' negligence claim is displaced by Article 4A and fails to state a claim upon which relief can be granted; and

**WHEREAS** Plaintiffs' second cause of action asserts a violation of the CFA. The CFA is intended to protect consumers from unlawful practices in the marketplace; however, its application to banking transactions is limited. In *Estate of Paley v. Bank of America*, a New Jersey appellate court addressed whether the CFA applies to claims arising from forged checks processed by a bank. 18 A.3d 1033 (N.J. App. Div. 2011). The court held that the CFA does not apply to such claims because the UCC provides an exclusive and comprehensive remedy for disputes involving negotiable instruments, including checks, and noted that "the application of the CFA to the various claims asserted by plaintiff against defendant bank [related to allegedly fraudulent checks] would conflict with the comparative negligence provisions of the UCC, would dilute the protections afforded to banks by the UCC, and would likely lead to inconsistent jury verdicts." *Id.* at 1035. That same analysis applies with equal force to claims made related to fraudulent wire transfers, which are similarly addressed by the UCC. Therefore, Plaintiffs' CFA claim is preempted by the UCC and fails to state a claim upon which relief can be granted; and

**WHEREAS** even if the CFA were not displaced by the UCC, Plaintiffs' claim independently fails under Rule 12(b)(6) for lack of sufficient allegations. To state a claim under the CFA, Plaintiffs must plead (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal

nexus. *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). Here, Plaintiffs allege only that four fraudulent transfers occurred, and admit in a sworn declaration appended to their opposition brief that Defendant later reimbursed the funds. Plaintiffs do not plead any particular misrepresentation or deceptive practice within the scope of the CFA, and essentially admit that they ultimately suffered no ascertainable loss because the funds were restored. *See Weinberg v. Sprint Corp.*, 801 A.2d 281, 291 (N.J. 2002) ("[T]he plain language of the [CFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action.") Thus, given that Defendant returned the funds to Plaintiffs, any alleged damages that stem from the wire transfers would be "hypothetical or illusory," and not "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, L.L.C.*, 872 A.2d 783, 792 (N.J. 2005). Moreover, even if Plaintiffs' negligence claim was not displaced by the UCC, dismissal would still be warranted because New Jersey courts have declined to recognize a common-law duty of care owed by banks to their depositors beyond the duties set forth in the UCC, *see City Check Cashing, Inc. v. Mfrs. Hanover Trust Co.*, 764 A.2d 411, 417–19 (N.J. 2001), because Plaintiffs have failed to allege any cognizable, non-speculative damages in light of the fact that Defendant reimbursed the disputed transfers, *see Thiedemann*, 872 A.2d at 792, and because Plaintiffs' claimed damages are barred by the economic loss doctrine, which precludes recovery in tort for purely economic injuries, *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562–65 (D.N.J. 2002); therefore

      Defendant's Motion is **GRANTED** and the Complaint is **DISMISSED**.

                                                 */s/ Susan D. Wigenton*
                                             **United States District Judge**

Orig:   Clerk
cc:     Parties
        James B. Clark, U.S.M.J.